### TIMOTHY BUELL *v.* LUCIUS CROSS.

Where a party has remedy at law, in the prosecution of which he has been defeated by an erroneous decision, he can not be aided in equity.

THIS was a suit in chancery, and reserved for decision by the Supreme Court in Washington county.

The bill stated, that some time previous to May 14, 1817, the plaintiff was treasurer of a certain company or association, existing in Washington county, and known by the name of the Duck Creek Bridge Company, which company, before that time, and under an act of the legislature of Ohio, had erected, at a great expense, a bridge across Duck creek, and had been accustomed to receive tolls, authorized by said act. That on May 14, 1817, one William Hart and the plaintiff, as treasurer of said company, entered into an agreement by which Hart rented said bridge for the term of one year, for the sum of three hundred and thirty-seven dollars, to be paid quarterly. That to secure the payment of the rent, Hart executed to the plaintiff, as such treasurer, a joint bond with Obadiah Lincoln, Philip Abbott, and Timothy Stanley, as securities. That no part of said rent has ever been paid by Hart, or any of his securities. That Timothy Stanley died some time in March, 1819, leaving a will, and Abigail Stanley his executrix, who made probate of the will. That on April 15, 1819, the plaintiff commenced a joint action of debt on said bond, against Hart, Lincoln, Abbot, and Abigail Stanley, as executrix of Timothy Stanley, and in July, 1819, a judgment, was rendered by default, against all the defendants, for the sum of five hundred dollars, the whole

Buell *v.* Cross.

penalty of the bond—no breaches having been assigned. That after the rendition of said judgment, and before March 24, 1825, Abigail Stanley died, and the administration of her estate, as well as that of Timothy Stanley, not fully administered upon, was committed to the *defendant, Lucius Cross. On March 24, [328 1825, the plaintiff issued a *scire facias* to revive said judgment against Cross, as administrator *de bonis non* of Timothy Stanley, upon which Cross appeared, and on demurrer, a judgment was rendered against the plaintiff, in June, 1825. Since the rendition of the original judgment, Lincoln has died wholly insolvent, Hart and Abbott are both insolvent; and at no time since the rendition of the original judgment, could anything have been collected from Hart, Abbott, or Lincoln. Executions against them were returned, no property found.

The prayer was, that Cross be decreed to pay the said sum of three hundred and thirty-seven dollars, with interest, to the plaintiff, as treasurer of the Duck Creek Bridge Company, and for general relief.

The defendant demurred generally.

NYE, in support of the demurrer, contended:

*First.* That as against the defendant, the complainant has no equity to be enforced; for that the obligation, on which it is sought to charge the estate which he represents, having been joint only, it was extinguished at law, as to Stanley, by his death; and equity will not give it new life against his representative, he having been a mere surety, liable only by the legal obligation rasied by the bond itself, and not by reason of any debt due from him, or benefit accrued to him in the transaction, from which an independent, moral, or conscientious obligation, might have risen or existed. 2 Johns. Ch. 1; 2 Evans' Pothier, 58; 1 Bro. Ch. 27; 2 Wash. 136; 2 Hen. & Munf. 124; 3 Ves. Jr. 399; 2 Johns. Ch. 585, 630, 651; 2 Atk. 31; 2 Ves. 101, 371; 1 Caine's Cas. Err.; 3 Ohio, 33; 1 Fonbl. 161, 162; 4 Desaus. 148.

*Second.* Whatever might have been the state of the question, anterior to the decision upon the *scire facias*, the complainant having brought his claim to a determination in that mode before a competent tribunal, is concluded by that determination.

*GODDARD, contra:  [329

The authority, from 2 Wash. 136, is admitted to be in point for

Buell *v.* Cross.

the defendant, but it is believed that no similar case can be found to sustain it. 4 Desaus. 148, is directly the other way. These two American authorities are directly opposed to each other, and are the only cases found upon this subject. There seem to be sound reasons why the South Carolina decision should be adopted rather than the Virginia.

It is true that the case in 2 Ves. 101, is liable to the exception stated in Washington, viz : that there was a binding to both obligors. But this circumstance should not impair the weight of the authority, unless the chancellor limits his decree to the amount actually received by the testator, and no such limitation appears.

It is clear that if upon the death of one obligor in a joint bond, the obligee can not compel any payment from the executors (the other and surviving obligors being insolvent), neither can one obligor who pays the whole debt, look to the executors of a deceased obligor for contribution. The whole doctrine rests upon the supposition, that where the bond is executed, the parties agree to take their chance of survivorship. This court has brushed away all the law on that subject relating to real estate. The present objection may as well share the same fate.

The consequences resulting from a decision in favor of the defendant may be serious. Sheriffs and coroners, justices of the peace, county auditors, administrators, guardians, and parties appealing from the court of common pleas to this court, are required by statute to give bonds, with two or more securities. In all these cases, and numerous others, a *joint* bond will satisfy the requisitions of the law, and no doubt such has been taken. Are the court prepared to sanction a doctrine, which may render these bonds useless, or which may subject one surety to the entire loss, without a contribution from the estate of his co-security, who has luckily died first? Is not all discussion upon this point unnecessary, in a ·330] case like the present, where the parties to *the bond *expressly* bind themselves, their *executors*, and *administrators ?*

Several other points were argued by the counsel, upon which the court intimated no opinion.

By the COURT:

The plaintiff, by his own showing, has a judgment now subsisting against the executrix of Stanley, and no good reason is assigned why that judgment does not embrace his rights. The doc-

trine, recognized by this court, in 3 Ohio, 305, is applicable to this case: that however summary, or however irregular, the judgment of a competent tribunal can not be treated as a nullity.    There is an explicit and formal judgment, and although the proceedings upon which it was predicated, may be unknown to our jurisprudence, still, as in all other judgments, they are not open for inquiry, except in a regular mode of re-investigation, on writ of error or *certiorari.*    The remedy of the plaintiff is purely at law; this remedy he has attempted by the *scire facias.*    If he properly failed, his rights are at an end; if improperly, his remedy was by error or appeal.

A person having an option of law or equity, after selecting one tribunal, can not resort to the other.    1 Ohio, 435; 2 Ohio, 268; 3 Johns. Ch. 356.

It is unnecessary to determine the question argued by counsel, whether, when the legal remedy against a surety is extinct, a court of equity will enforce the obligation.    This court would hesitate, before they adopted the doctrines contained in the cases cited from 2 Wash. 136; 2 Hen. & Munf. 124.

Bill dismissed.